United States District Court for
the District of Maryland

| | |
|---|---|
| **United States**<br><br>v.<br><br>**Marilyn Mosby** | No. 1:22-cr-7-LKG |

### Response to Government's Motion in Limine to Exclude Evidence and Argument Regarding Other Prosecutorial Activity and Funds Ownership

The government has asked the Court to (1) preclude Ms. Mosby from introducing evidence or raising arguments regarding "other prosecutions" for similar conduct at trial, and (2) prohibit Ms. Mosby from arguing that the money in her 457(b) account was "her" money. As to the first, Ms. Mosby has no intention of raising arguments to the jury regarding selective or vindictive prosecution or regarding the novelty of this prosecution. Ms. Mosby therefore responds only to the second portion of the government's motion in limine, to make clear why the jury is entitled to know that the 457(b) funds were from her retirement account.

### Argument

The government asks the Court to bar Ms. Mosby from referring to the money in her retirement account as "her" money. ECF 255 at 4. The government contends that the "her money" phraseology will confuse the jury because whether she had a property interest in that money is irrelevant under the perjury statute. *Id.* And it fears Mrs. Mosby's use of "her money" will invite jury nullification by depicting her alleged offense as "minimal" and suggesting she could "use [the money] as she wished at any point in time." *Id.*

There is nothing remotely confusing about referring to the money in Ms. Mosby's account as "her" money. It may be true, as a legal matter, that money in a 457(b) account is "held in trust" for participants until they are eligible to withdraw it. But laypeople—and even

1

most lawyers—do not conceive of retirement accounts in those terms. Non-lawyers do not think of the money in their retirement accounts as "money being held in trust for me by my employer." So to the extent Ms. Mosby cannot describe the money in question as "her" money, she will be forced to resort to tortured locutions that will only distract the jury, *e.g.*, "Ms. Mosby was eligible to withdraw the money being held in trust for her by the City of Baltimore," or "Ms. Mosby submitted a form to Nationwide asking to withdraw money that the City of Baltimore was holding in trust for her." It is these formulations—not "her money"—that will confuse the jury. Why, jurors will wonder, is Ms. Mosby talking about a "trust"?—a term that is foreign to most jurors and has no obvious connection to this case. The way to avoid confusing the jury is to permit Ms. Mosby to use the simplest, most straightforward description of the money in question.

In any event, the government's argument does not work even on its own terms. The tax code provides that when a 457(b) participant satisfies a withdrawal condition, the money in her account is thereby "made available to [the] participant[]." 26 U.S.C. § 457(d)(1)(A) (describing circumstances in which participant can withdraw funds, *e.g.*, when the participant turns seventy-and-a-half years old, when "the participant is faced with an unforeseeable emergency," etc.). Once money is "made available to the participant," then under § 457(b)(6), it ceases to be "solely the property and rights of the employer." And the "trust" holding a participant's deferred compensation exists only with respect to "assets and income of the plan *described in subsection (b)(6)*." *Id.* § 457(g)(1) (emphasis added). In other words, once a withdrawal-eligibility condition is triggered, money in a 457(b) plan is no longer held "in trust" and is no longer "solely the property . . . of the employer," since that money has been "made available to the participant." The upshot is that once Ms. Mosby qualified to

take a withdrawal based on covid-related adverse financial consequences, the money in her account *was* "her" money, even on the government's theory.

Of course, the government disputes that Ms. Mosby was eligible to take a withdrawal under the CARES Act. But prohibiting Ms. Mosby from describing the funds as "her money" would require the Court to assume, at the outset of trial, that she is guilty. That, the Court cannot do.

Finally, Ms. Mosby does not intend to argue at trial—either explicitly or implicitly—that the jury should acquit her because she did nothing more than try to access her own money. She recognizes that a defendant may not invite jurors to nullify, and she will not do so. The government's fears are misplaced.

## Conclusion

For the reasons described above, the Court should deny the government's motion in limine.

Respectfully submitted,

/s/ James Wyda  
James Wyda  
Federal Public Defender  
Office of the Federal Public Defender  
100 South Charles Street  
Tower II, 9th Floor  
Baltimore, MD 21201  
Phone: (410) 962-3962  
jim_wyda@fd.org

/s/ Lucius Outlaw  
Lucius Outlaw  
Outlaw PLLC  
1351 Juniper Street, NW  
Washington, DC 20012  
Phone: (202) 997-3452  
loutlaw3@outlawpllc.com

/s/ Maggie Grace  
Maggie Grace  
Assistant Federal Public Defender  
Office of the Federal Public Defender  
100 South Charles Street  
Tower II, 9th Floor  
Baltimore, MD 21201  
Phone: (410) 962-3962  
maggie_grace@fd.org