UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES | * | |
| v. | * | No. 1:22-cr-7-LKG |
| MARILYN MOSBY | * | |

\* \* \* \* \* \* \* \* \* \*

**REPLY TO GOVERNMENT'S RESPONSE TO MOTION IN LIMINE TO PROHIBIT GOVERNMENT ARGUMENT REGARDING THE SIZE OF ADVERSE FINANCIAL CONSEQUENCES**

Mrs. Mosby has moved in limine to prohibit the government from stating or arguing to the jury that "adverse financial consequences" do not render a 457(b) enrollee eligible to take a coronavirus-related distribution (CRD) unless they exceed some minimum dollar amount. ECF 249. In response, the government argues, based on dictionary definitions of terms, that it should be allowed to argue to the jury that "a negligible and insignificant loss" does not qualify for a CRD. ECF 273 at 1.

I. **The Government Cannot Tell The Jury What The Law Is.**

The government's response makes clear that, even after preventing Mrs. Mosby from having an expert testify regarding the implementation and requirements of the CARES Act as it relates to early withdrawals from retirement plans, *see* ECF 79 at 18-22 (government motion to exclude CARES Act expert); ECF 105 at 14-15 (memorandum opinion and order excluding CARES Act expert), and agreeing that the Court should define the legal term "adverse financial consequences," it—the government—wants to, itself, instruct the jury about the law and, specifically, the meaning of "adverse financial consequences." The government's response states: "The government should be allowed to argue that a negligible and insignificant loss should not qualify as an adverse financial consequence, as that term is

1

ordinarily understood, and as the defendant understood the term at the time she falsely certified the form." ECF 273 at 1.

That it cannot do. The function of argument is "to help the jury remember and interpret the evidence." *United States v. Sawyer*, 443 F.2d 712, 713-14 (D.C. Cir. 1971). And arguments are "limited to the facts in evidence and reasonable inferences flowing therefrom." *United States v. Brainard*, 690 F.2d 1117, 1122 (4th Cir. 1982); *accord United States v. Ojala*, 544 F.2d 940, 946 (8th Cir. 1976).

Neither counsel is permitted to make representations about the law. *Sawyer*, 443 F.2d at 713-14 ("The court should exclude [from argument] only those statements that misrepresent the evidence or the law, introduce irrelevant prejudicial matters, or otherwise tend to confuse the jury." (footnotes omitted)). It would be entirely improper to allow the government to argue to the jury that "a negligible and insignificant loss should not qualify as an adverse financial consequence." ECF 273 at 1; *e.g.*, People v. Hizer, 267 Cal. App. 2d 47, 56-57 (Cal. Ct. App. 1968) ("As a matter of fact, the statement made by counsel for the defendant was not accurate in that it did not state the total rule as established by decisions and which is discussed hereinafter, and the court was correct in preventing counsel for the defendant in acting as the judge and giving to the jury a partial instruction as attempted."); *People v. Wright*, 225 N.E.2d 460, 464 (Ill. App. Ct. 1967) ("The statement as such was certainly improper, not only as to the incorrect law it attempted to impose upon the jury, but because the prosecutor invaded the province of the court which alone may instruct the jury as to the law."); *People v. Mager*, 25 A.D.2d 363, 367 (N.Y. App. Div. 1966) ("[T]he trial court properly prevented defense counsel from arguing to the jury his erroneous interpretation of the rule to be derived from the recent

decision of the United States Supreme Court in *Garrison v. Louisiana* (379 U. S. 64, supra.). The legal effect of that decision was a pure question of law for the Trial Judge alone.").

The rule barring counsel from arguing what the law is makes sense because the Judge is the arbiter of the law and the jury is the arbiter of the facts. "[I]t is the duty of juries in criminal cases to take the law from the court, and apply that law to the facts as they find them to be from the evidence." *Sparf v. United States*, 156 U.S. 51, 101-02 (1895); *United States v. Moylan*, 417 F.2d 1002, 1007 (4th Cir. 1969) (noting how the rule announced in *Sparf* "has carried the day"); *see also Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 366 (4th Cir. 1986) ("[I]t is the responsibility—and the duty—of the court to state to the jury the meaning and applicability of the appropriate law, leaving to the jury the task of determining the facts which may or may not bring the challenged conduct within the scope of the court's instruction as to the law."), *abrogated on other grounds by Pinter v. Dahl*, 486 U.S. 622 (1988).

Accordingly, it is not within the scope of the government's argument to tell the jury what it (the government) thinks the law should be. It is only within the scope of proper argument for the government to argue that Mrs. Mosby did not suffer adverse financial consequences as the Court has defined the term (*i.e.*, "an unfavorable or negative outcome related to money"). The government cannot use dictionary definitions to cobble together its own standard—*i.e.*, "a negligible and insignificant loss should not qualify as an adverse financial consequence," ECF 273 at 1—and argue that Mrs. Mosby did not meet that standard. Doing so invades the province of the Court.

Indeed, the Court invited comment on its proposed CARES Act-related jury instructions. *See* ECF 243. Mrs. Mosby filed one minor proposed revision to the instruction regarding "withdrawal amount and number instruction," and requested an additional instruction that the

CARES Act did not set a minimum dollar amount of adverse financial consequences (which is particularly important given that we now know the government's intended argument to the jury). *See* ECF 267. The government did not file anything and, instead, now seeks, itself, to instruct the jury during closing argument.

### II. The Government's New Definition Of "Adverse Financial Consequences" Invites A Conviction Based On An Erroneous Understanding of the Law.

Previously, the government attempted to impose a "de minimis" threshold before a person was eligible to take a 457(b) coronavirus-related distribution. *See* ECF 231 at 6-8 ("But while the CARES Act does not set a flat numerical minimum, a plain reading of the form itself and the CARES Act support that an 'adverse financial consequence' cannot be *de minimis*."). Now, the government abandons that term and sticks to trying to impose a "negligible and insignificant loss" threshold. ECF 273 at 1-3. The shifting terms are not based on the text of the CARES Act and, instead, is cobbled together through dictionary definitions and wholly unrelated judicial decisions in other contexts. *Id.* at 2.

For reasons Mrs. Mosby has already explained, the government's interpretation has no footing whatsoever in the text of the CARES Act and is a flagrant attempt to rewrite the statute to suit its prosecutorial goals. ECF 232-1 at 5-8. Most notably, the government still fails to grapple with the meaning of "adverse," which means "opposed to one's interests," "unfavorable," or alternatively, "having a negative or harmful effect on something." *Id.* As these definitions make clear, the words "adverse" and "unfavorable" impose no substantiality requirement. The government's "insignificant" and "negligible" thresholds *would* impose a substantiality requirement. ECF 273 at 6-7.

Three other points are worth noting:

*First*, the government says that, if Mrs. Mosby's interpretation of the CARES Act is

4

correct, then "*every* citizen" would be able to take a CRD. ECF 273 at 3 (emphasis in original). That is obviously wrong because people are eligible to take a CRD only if they suffered one of four specific types of AFCs as a result of the coronavirus.

*Second*, if the term adverse financial consequences in the CARES Act contains an implicit "de minimis" or significance requirement, as the government suggests, then *every* statute must contain such a requirement as well. Liability under every statute (criminal or civil) turns on whether someone has experienced a certain kind of harm. And on the government's view, you can't "experience" something that is de minimis. Therefore, every single statute in the U.S. Code must necessarily require more than a de minimis amount of harm. That is not the law.

*Third*, in another context, the Fourth Circuit has concluded "consequences" are "adverse" as long as they are "sufficient to satisfy the case or controversy requirement of Article III." *United States v. Akinsade*, 686 F.3d 248, 252 (4th Cir. 2012). And the Supreme Court has held that a plaintiff's request for "nominal" damages—even those as low as one dollar—satisfies Article III's standing requirements. *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 797-802 (2021). Thus even one dollar qualifies as an "adverse" financial "consequence[]." *Akinsade*, 686 F.3d at 252. Of course, the Fourth Circuit's opinion in *Akinsade* addressed a question—*i.e.*, the requirements for obtaining a writ of error coram nobis—different from the question in Mrs. Mosby's case. But it nevertheless demonstrates that the plain, ordinary, common sense meaning of the term "adverse consequences" requires nothing more than the absolute minimum dollar amount necessary for Article III standing, namely, a single dollar. That term, in other words, does not contain the government's phantom "de minimis" requirement.

### III. Allowing The Government To Make This Argument Without Providing The Jury With An Instruction That The CARES Act Did Not Set A Minimum Dollar Amount Will Violate Mrs. Mosby's Due Process Rights.

In its opening motion, Mrs. Mosby highlighted a serious constitutional problem: due process requires that a person have fair notice of conduct that will subject her to punishment. ECF 249 at 2. Allowing the Government to argue that she did not suffer adverse financial consequences because her loss was "negligible" or "insignificant" or "de minimis" is a serious concern, *given that the term was not defined at the time Mrs. Mosby self-certified that she qualified for a withdrawal*. And this is all the more problematic, *given that the jury will not be told that the term was not defined at the time Mrs. Mosby self-certified that she qualified for a withdrawal*.[1] That is because there will be no evidentiary basis for defense counsel to tell the jury that, given that there will be no expert testimony on this point. And of course, it was the government that sought to block Mrs. Mosby from introducing the expert testimony that would provide the missing evidentiary basis. Moreover, there is currently no jury instruction that tells the jury that the CARES Act did not set a minimum dollar amount of adverse consequences. *See* ECF 267 (requesting this instruction). Accordingly, defense counsel will be stuck and unable to correct the government's argument.

### IV. Conclusion

For these reasons, the Court should enter an order precluding the government from arguing to the jury that "adverse financial consequences" do not authorize a CRD unless they meet a certain size requirement or are more than "negligible," "de minimis," or "insignificant."

---

[1] Another problematic layer is this. "Insignificant" and "negligible" are undefined terms that people define differently. What is insignificant to one, may be very significant to another. A $5,000 loss to Microsoft is insignificant, but that same loss is very significant to the owner of the corner coffee shop. Indeed, the parties cannot come to an agreement on the meaning of adverse financial consequences. This is just another way Mrs. Mosby's due process rights are violated: the jury

Respectfully submitted,

/s/ James Wyda
James Wyda
Federal Public Defender
Office of the Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, MD 21201
Phone: (410) 962-3962
jim_wyda@fd.org

/s/ Lucius Outlaw
Lucius Outlaw
Outlaw PLLC
1351 Juniper Street, NW
Washington, DC 20012
Phone: (202) 997-3452
loutlaw3@outlawpllc.com


/s/ Maggie Grace
Maggie Grace
Assistant Federal Public Defender
Office of the Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, MD 21201
Phone: (410) 962-3962
maggie_grace@fd.org

---

might struggle with the term "adverse financial consequences" and make compromises to reach a definition that violates Mrs. Mosby's due process rights.