IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. LKG-22-007 |
| | * | |
| MARILYN MOSBY, | * | |
| | * | |
| Defendant. | * | |

*******

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE CONCERNING FLORIDA HOMES**

The defendant committed mortgage fraud to purchase two luxury Florida vacation homes. Descriptions and photographs of these homes are part of the central evidence in this case: the false loan application the defendant signed. What's more, the defendant's intent to use the Kissimmee home as a rental property forms a critical element of one charge as well. Thus, the description of the Kissimmee home—and its possibility to be easily configured as a rental property—is also essential to the case. Unlike in the perjury trial, the purchased properties are the focus of the case, because they are the direct object of the fraud, and their description is essential to understanding the case and the lies made by the defendant.[1]

1. **The Florida Homes Are Described and Pictured in the Mortgage Applications**

The defendant's false mortgage applications contain the lies at issue in the case, making the contents therein highly relevant. Each application contains a lengthy description of the home, including amenities and pictures. The jury is entitled to see the actual forms the defendant signed, and the description of the houses contained therein. There is simply no good reason why the central evidence in the case should be kept from them.

---

[1] The government does not plan to introduce evidence that the defendant sold a home for profit in its case in chief. If it intends to do so in cross examination, it will first inform the Court outside the presence of the jury.

The government does not intend to introduce evidence regarding the houses beyond the descriptions and photos in the mortgage documents that form the core of this case. To preclude the jury from seeing the mortgage applications would deprive the jury of critical evidence in this matter. Rule 403 "does not provide a shield for defendants . . . permitting only the crimes of Caspar Milquetoasts to be described fully to a jury. It does not generally require the government to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone." *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998).

Perplexingly, the defendant now moves to prohibit information regarding the costs of the homes that was previously allowed in her perjury trial. *See* ECF 341, at 5. In the perjury trial, the homes did not form the crux of the crime, but rather were used to show the defendant had not suffered adverse financial consequences. Now, in a trial regarding mortgage fraud for the purchase of those homes, the defendant seeks to preclude the government from discussing the purchase price of the homes (and therefore presumably the mortgage amounts). That is nonsensical. Such information is part of the applications the government will present, and critical to understanding why the defendant sought to have a lower interest rate (and lied to do so), since interest payments are a direct function of the cost of the house. The purchase price of the homes is the most basic of information, and necessary to understand the crime here. Such evidence was permitted in the perjury trial, is essential to understanding the mortgage fraud, and appears throughout the critical exhibits in this case.

As for whether the word "luxury" is accurate, there is no doubt it clearly describes the homes purchased. And there is no reason *in a mortgage fraud trial* that the jury should not understand fully the reasons for the crime. *See, e.g., United States v. Reid*, 2010 WL 2653229, *2 (M.D. Fla. July 2, 2010) (rejecting the defendant's claim that use of the words "upper-end" to

describe the homes involved in charged mortgage fraud were prejudicial; all of the homes involved in the fraud were purchased for more than $400,000; thus, the court found that "upper-end" was accurate description of the purchase prices).

What's more, the defendant has proposed introducing a picture of the home in a separate motion. *See* ECF 30, Ex. A (Baltimore Brew Tweet). And that tweet also states that she "got a roughly $50,000 break on the down payment and will pay a lower interest rate." In other words, the defendant seeks—in another motion—to introduce *the very information she now seeks to preclude*. This confusion underscores the fundamental role descriptions of the properties, particularly as discussed below the Kissimmee property, will play in the case.

2. **The Defendant's Intent to Use One Property As a Vacation Home Is Critical to This Case.**

Another fundamental aspect of the charges is the defendant's lie to the lender that she would occupy the Kissimmee home, when she had actually signed an agreement with a property management company a week earlier. And the defendant didn't sign with just any rental company; she signed with Executive Villas, a company that prides itself on its homes: "luxury vacation home[s] located only minutes to Disney World! Our rental homes feature a private pool and spa for relaxing after a day at the parks[!]"[2]  Amazingly, the defendant now seeks to preclude the use of the word "luxury" and the fact that her vacation home rental had a pool, which is front and center in the description of the homes by the company *she chose to be the rental agent and subsequently lied about*.  The jury should not be deprived of this fundamental evidence because of some sort of inchoate fear that she will be penalized for committing mortgage fraud to obtain luxury properties. The defendant's chosen rental company advertised her homes as being vacation

---

[2] *See* https://executivevillasflorida.com/ (last accessed Dec. 20, 2023).  This language on the front page of the website was identical when the defendant made her purchase in 2020.
*See* https://web.archive.org/web/20200511131810/https://executivevillasflorida.com/

3

properties with a pool. The jury should hear evidence regarding the defendant's chosen description because this evidence demonstrates what the defendant did and what was in her mind when she did it.

In addition, the fact that the property was configured to be rented out as a vacation home is important to proving the defendant intended to do so at the time of purchase. Had the defendant purchased a small one-bedroom bungalow poorly configured as a rental property, or a home that needed extensive renovation before occupation, she might have an argument for mistake on her part in the mortgage form. But she did not: she purchased an eight-bedroom, six-bathroom, 4083 square foot property that could easily be made into a full-time rental, which was her plan. A description of this property is thus important to proving her intent when she signed the mortgage application.

## CONCLUSION

The defendant is on trial for mortgage fraud. The jury is entitled to descriptions of the properties the defendant committed fraud to purchase that are contained in the mortgage applications that sit at the core of this case. And since the defendant's plan to rent out the Kissimmee home forms a fundamental part of the crime, the fact that the property could easily be configured as a rental property is critical information to supply to the jury.

The defendant's motion should be denied.

Respectfully submitted,

Erek L. Barron
United States Attorney

By: _____/s/_____
Sean R. Delaney
Aaron S.J. Zelinsky
Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this day, a copy of the foregoing motion was electronically filed via CM/ECF which provides notice to counsel of record.

_____/s/_____
Aaron S.J. Zelinsky
Assistant United States Attorney