## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO.  LKG-22-007** |
| | * | |
| **MARILYN MOSBY,** | * | |
| | * | |
| **Defendant.** | * | |
| | ******* | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE CARES ACT WITHDRAWALS AND PERJURY

The United States of America opposes the defendant's request to exclude the facts underlying her perjury conviction and the conviction itself.  The facts underlying the conviction are intrinsic to the alleged mortgage fraud, and the facts and the conviction are admissible under Federal Rule of Evidence 404(b) to show the defendant's motive, intent, plan, knowledge, and absence of mistake.[1]

Perplexingly, the defendant's current motion appears to directly contradict her earlier grounds for severance in this case. The defendant previously argued that she had a "genuine need" to testify in "one *and only one*" trial—by all appearances her first trial where she filed motions about how she would testify and asked the Court on multiple occasions for additional time to decide whether to testify. Now, having been convicted at that trial, the defendant appears to argue precisely the opposite: she has a "genuine need" to testify in the mortgage fraud trial but can't be asked about the CARES Act charges. Such internally inconsistent arguments and shifting facts are

---

[1] The Defendant states that it is unclear whether "the government intends to introduce the fact that Ms. Mosby was convicted of perjury, or just the facts underlying those convictions." ECF 346, at 3. The answer, as detailed below, is both. The Government believes the facts are admissible as intrinsic evidence, and the conviction and facts are admissible under Rule 404(b).

not a defense strategy—they are mere gamesmanship—and should not be countenanced by this Court.

### 1.  The Defendant's Current Motion Flatly Contradicts Her Earlier Motions

The defendant previously moved to sever her perjury charges from her mortgage fraud charges. *See* ECF 207, at 10. Fundamental to her severance motion—indeed the only reason the Court granted the motion just weeks before the joint trial was to begin—was that the defendant claimed she could meet the legal standard required: a "convincing showing that [she] has both important testimony to give concerning one count and *strong need to refrain from testifying on the other*." ECF 207, at 10, *citing United States v. Goldman*, 750 F.2d 1221, 1225 (4th Cir. 1984) (emphasis added).  In fact, the defendant herself argued she met the high legal standard of showing a "'genuine' need to testify on *one, and only one, set of the counts*." ECF 207, at 10 (emphasis added).

To support her contention, the defendant filed an *ex parte* submission with the Court regarding her proposed defenses, to which the government is necessarily not privy. However, the defendant's ensuing filings and actions make clear which "one and only one" set of counts she intended to testify about: her "genuine need" was to testify on the perjury counts, and not to testify on the mortgage fraud counts.  *See* 9/8/2023 Tr. 114:18-21 (Court stating that "we all know enough about this case as to the general sense of what the charges are and the evidence in the case to generally understand what those concerns [detailed in the ex parte filing] would be.").

In the previous trial, the Defendant filed a motion in limine to prohibit the government from cross-examining her about the mortgage fraud allegations at the perjury trial, precisely the sort of motion that would be filed if the defendant intended to testify about "one and only one" at the perjury charges. *See* ECF 248. Indeed, the Court and the parties subsequently engaged in an

extended colloquy about how to cross-examine the defendant outside the presence of the jury on the mortgage fraud matters, should she take the stand in the perjury trial. And the defendant herself requested the night to determine whether she would testify during the trial.  That night, defense counsel gave every indication that the defendant was seriously considering testifying in the perjury case and would do so but for the fact that she wanted to know the jury instructions before she finalized her decision. *See* 11/7/2023 Tr. 150:25-151:2 (Mr. Wyda: "We would like to be able to make the decision about Ms. Mosby testifying after we've resolved all the outstanding jury instructions."). And the next morning, on November 8, the defendant again stated that she was still determining whether to testify in the perjury trial, but this time wanted more information regarding cross-examination by the government. *See* 11/8/2023 Tr. 3:22-23 (Mr. Wyda: "in light of the proffer from the Government about the issues regarding potential cross-examination areas from Ms. Mosby we are not prepared to advise Ms. Mosby of whether she should take the stand."). Then, after being denied a request for a preview of cross-examination by this Court, the defendant requested an additional recess to discuss potential testimony with her attorneys. *See* 11/8/2023 Tr. 18:3-5 (Mr. Wyda: "Your Honor, I would ask for the courtesy of a few minutes to talk to my client.").

All of these actions are consistent with the defendant having argued that she needed to testify on "only" the perjury trial, and that she had a "strong need" not to testify in the mortgage fraud case. Otherwise, the proceedings above were a colossal waste of the Court's time.  That the defendant has now been convicted in one matter does not entitle her to new facts.

What's more, this Court explicitly relied on the defendant's proffer in severing these counts, and based its ruling (and the sequence of the trials) solely on the fact that the defendant needed to testify in one trial but would not testify on the matters at issue in the second.  The Court

3

severed the counts because "the Court is concerned that a joint trial would encumber the Defendant's decision about whether to assert her Fifth Amendment privilege against self-incrimination with regards to certain counts in this case." ECF 244, at 15.   The government proposed the mortgage fraud trial go first, while the defendant requested the perjury trial go first. The Court ultimately deferred to the defendant's request.  It would seem nonsensical, if the defendant wanted to testify *only* at the mortgage fraud trial, to precede in this order, since doing so would have risked putting the defendant in exactly the circumstance in which she now finds herself: a convicted perjurer, preparing to weigh whether to take the stand and face cross examination on her conviction.  Rather, the order which the defendant requested is fully consistent with all her other actions indicating that she sought only to testify in the perjury trial.

But now the defendant appears to have completely forgotten her earlier arguments, and her "strong need" to "refrain from testifying" in the second trial. Now she argues that she "may wish to testify in defense of the mortgage fraud counts *while continuing to remain silent on the perjury counts*." ECF 346, at 14.  This is the precise opposite of what she appears to have argued earlier. The defendant argued to this Court—and submitted an ex parte filing—stating that she had a "genuine need" to testify on "one and *only one*" of the matters in this case, and all evidence indicates that concerned the CARES Act withdrawal.  The Court should not allow her to argue one thing in severance and another at this point.   The defendant cannot reverse her argument now. In simplest terms, if the Court had known that the defendant did not intend to testify in the first trial, it never would have granted severance. The defendant should not be allowed to reverse course entirely and benefit from that severance as an act of mere gamesmanship.

The defendant points to no case to support its novel contention: that she may argue a "genuine need" to testify on the first set of charges, but not the second, and then, having been

convicted at the first trial, reversing her "genuine need" and claiming the truth is the opposite of what she argued earlier.  There's a reason for this: to allow defendants to issue such contradictory statements, and to flip their position based on the outcome of the first trial, would encourage *every* defendant to argue that they have testimony to present on some charges and not others, and to sever the cases and then decide, if they are convicted, to flip their argument and facts around for the second trial.  There is no justice in allowing the defendant a "tails I win, heads you lose" argument. *See United States v. Nyarko,* 2018 U.S. Dist. Lexis 218443, at * 8 (EDNY November 19, 2018) *(*"The Court has no interest in rewarding Mr. Nyarko's behavior and giving him a 'tails I win, heads you lose'").  The defendant cannot both have a "genuine" need to testify in the first trial and a "strong need to refrain from testifying" *at that same trial*.  These are legal proceedings, not quantum physics. *See. e.g.*, *Cabantac v. Holder*, 736 F.3d 787, 792, n8 (dissent) (9th Cir. 2013) ("Schrödinger's cat, originating in quantum physics, is a symbol of something that exists in two contradictory states at the same time.").

**2.   The Defendant's Four Lies to Obtain Funds to Purchase Vacation Properties are "Part of a Single Criminal Episode*."***

The "story of the crime on trial," is simple and straightforward: the defendant told a series of lies to obtain funds necessary to purchase two vacation homes in Florida. *United States v. Brizuela,* 962 F.23d 784, 793-94 (4th Cir. 2020). In a continuous series of interrelated actions, she lied to financial institutions to get the money she needed to make her purchases.

First, she told a lie to Nationwide to obtain 457(b) funds to use as a downpayment. Then, she took the proceeds of that lie and lied to Cardinal Financial Realty get the rest of the money needed to buy a second home. Then she did the same thing all over again for the second Florida home: she lied to Nationwide to obtain 457(b) funds. And she lied to United Wholesale Mortgage to obtain the remainder of the funds needed to buy another home.  What's more, there will be

evidence at this trial that Cardinal Financial Realty explicitly *asked* about the 457(b) withdrawal in assessing her mortgage application, to make sure those funds were actually available to be used for the transaction. And, *two days before closing* on the first home, when it looked like the defendant might need another $7,000 to obtain the mortgage, the defendant, in a conversation with her mortgage broker was clear on what her plan was to obtain those additional funds:



In other words, the defendant, just two days before closing on the Kissimmee home, texted her mortgage broker that she could again commit perjury and obtain additional 457(b) funds, if that was what it took to close on the house. The withdrawal of the funds thus forms an "integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." *Bush*, 944 F.3d at 196.  Just *two days* before committing the acts charged

in Count Two, the defendant was texting her mortgage broker about perjuring herself yet again to obtain additional funds.

*First,* the defendant argues that "the source of [the downpayments] is in no sense an 'integral and natural' part of the circumstances surrounding the alleged misstatements on the bank loans." ECF 346, at 8.  But the evidence at this trial will show that the defendant had a prolonged discussion with Cardinal Financial Realty about the source of funds. And she discussed obtaining more funds (via perjury) with her mortgage broker days before the closing on the first mortgage. The defendant committed these crimes because she had no access to any other funds, and that in her cash-strapped financial state, she was willing to commit federal crimes to secure the mortgages, since she could not lawfully obtain them had she told the truth about her finances and her intentions with those properties. In that context, it is essential that that the jury understand that the defendant had access to virtually no funds—no funds for downpayment, and no funds to payment of the mortgage. By understanding that that the defendant did not lawfully obtain access to the 457(b) funds, the complete story of the defendant's abysmal finances (in spite of her nearly quarter-million-dollar salary) will be clear to the jury. And understanding the defendant's desperation to secure these mortgages in the face of her financially precarious state is fundamental to understanding *why* the defendant might lie over what could seem, to jurors to be relatively trivial matters.  The defendant lied in part because she had no other funds available—and this was the only way to secure the properties on which she had spent so much time discussing and working to acquire.

*Second*, the defendant also argues that these are not from the same "series of transactions" because the defendant committed perjury on May 26, 2020 and didn't "*complete* an application for a mortgage on the Kissimmee home until two months later." ECF 346, at 9 (emphasis added).

But the word "complete" is doing a lot of work in that sentence. *See Canen v. Comm'r of Soc. Sec.*, 2013 U.S. Dist. Lexis 160023, at *12 ("the 'beginning on' is doing a lot of work in that sentence as these impairments either existed well before, or developed after, the July 14, 2010 date.").  The *entire* reason the defendant sought to access 457(b) funds was to purchase a second home. On May 24, 2023, the defendant had arrived on a home in Baltimore and "submitted all of [her] paperwork, and was looking forward to the closing date:



May 24, 2020, 12:55 PM

Hey there!  We are about to take the girls for a bike ride, but I wanted to check in with you real quick. Do you have someone you want to do the home inspection, or would you like me to send you a couple names?

We need to get the inspections set up and I need to pick up your EMD check.  After that, it will mostly go into Brad and Bret's hands.

I submitted all of my paperwork to Brad yesterday. I'm reaching out to an inspector now.

When would it need to be set up?

When will we find out the final closing date?

The mortgage broker relied and told her that the closing would be "Tuesday or Wednesday of this week":



May 25, 2020 was a Monday.  The closing for the Baltimore home the defendant sought to purchase was supposed to take place on Tuesday, May 26 or Wednesday, May 27.  The defendant withdrew the funds from the 457(b) plan on Tuesday, May 26.  The funds were clearly intended to be used to secure a mortgage for a second property.  And the defendant's financial shape was equally precarious in May 2020, so there is every reason to believe she would have told the same lies on her mortgage application in late May as she did in July.  That she then withdrew 457(b) funds for the purchases of the Baltimore home, but when that transaction fell through kept the funds in her bank account for a later purchase, is not a material difference.  Moreover, as discussed above, the defendant—*two days before closing*—discussed potentially withdrawing additional funds from the 457(b) plan to cover an additional funding shortfall. Such activity is within "days" of the charged offense. *See United States v. Dumire*, 2016 WL 4507390, at * 6 (W.D. Va. August 26, 2016).

The defendant also argues that the 457(b) withdrawal "concerns taking money from a retirement account" while the "mortgage fraud counts concern purchasing homes." ECF 346, at 10. But this misses the point entirely: the defendant improperly obtained *funds to buy a house* from the 457(b) plan, and improperly obtained *funds to buy a house* from the banks by committing mortgage fraud. In both cases she told lies to obtain the funds she needed in order to purchases the houses. And in all these cases she did so by lying to financial institutions: Nationwide, Cardinal Financial Realty, and United Wholesale Mortgage.

***Third,*** the evidence of the withdrawals is "necessary to complete the story of the crime on trial." *Brizuela*, 962 F.3d at 794. Otherwise, what are the funds the defendant is talking about with her mortgage broker? What funds was Cardinal Financial Realty inquiring about? Why might she be in difficult financial straits that cause her to lie on mortgage applications if she has tens of thousands of dollars at her ready disposal to use on downpayments? All of these will be open and hanging questions for the jury, unless the government can complete the entire story by telling the jury what actually happened: the defendant lied to Nationwide to obtain the downpayments, and then lied to the lenders to obtain the rest.

As for the relevance of the evidence, ECF 336, at 11, First, the evidence shows that she was in difficult financial straits, which explains *why* she might be willing to lie on the forms to the bank to secure the mortgage and secure a lower interest rate: she had no access to capital otherwise. She needed these funds to complete the process and could not lawfully have obtained the mortgage otherwise.

As to the weighing calculus under Rule 403, the fact of the lies the defendant told to get the properties are highly probative, because they go to most critically to her absence of mistake. The government will thus put on evidence that shows that the defendant lied in taking these

withdrawals. Such information provides evidence that the defendant could not actually afford the houses she sought to purchase. And so she made statements to "influence a bank's action" because she had no access to funds otherwise, including no access to the downpayment funds.  The series of transactions involving the Kissimmee likewise indicate her purpose based on her conversations: she needed the funds to purchase a third home.  As the evidence showed at her first trial, she needed to withdraw those funds by the end of the calendar year, because she would have otherwise lost the ability to withdraw 457(b) funds.  Thus, she withdrew the funds at the end of 2020 so she could use them to purchase the second home, once she found a suitable home.

As for evidence "contaminating" the jury's analysis, ECF 346, at 13, that is not a concern, as the evidence is part of one consistent narrative. There is not a substantial issue of prejudice (as the Court recognized when it ruled to sever exclusively based on the need to testify). And the acts are sufficiently distinct that the Court can instruct if necessary that the defendant is not charged at this trial with lying to Nationwide.

### 3.  The Evidence Will Not Take Long to Introduce

The presentation of evidence in the first trial took two days. The Government's case took even less time.  Even if the entire case it put on again, that is not a substantial increase in time on a trial scheduled for multiple weeks. And the presentation of the evidence will be relatively quick here and can be done through a single witness: FBI financial analyst Jenna Bender.  This presentation will be more streamlined because it is not the fact on which the jury must render a verdict. Moreover, the "carefully crafted" jury instructions regarding the Cares Act can quickly be read to the jury if necessary, though in this matter they are unlikely to be needed, because the jury need not find that the defendant committed perjury beyond a reasonable doubt. The evidence merely tells the complete story of what has occurred.  Just as it is relevant when a bank robber

steals a car and uses it in a subsequent bank robbery, so too is it relevant when a defendant improperly accesses downpayments and uses them in a subsequent mortgage fraud. That is part of a cohesive narrative that should not be withheld from the jury.  Evidence that the defendant falsified her withdrawals is clearly relevant to the complete story of her withdrawals.

### 4.  The Conviction and the Evidence Underlying It Are Admissible Under Rule 404

In the alternative, the evidence underlying the conviction is admissible under Rule 404(b), as is the conviction itself. There is no question that the contemporaneous lies told to Nationwide to access the retirement funds help prove "motive, opportunity, intent, preparation, plan, knowledge . . . [and] absence of mistake or accident." Fed. R. Evid. 404. The defendant has made clear she will argue that any errors on the forms were the product of mistake or accident.  *See* ECF 350.  But such an argument is contradicted by her perjury to Nationwide, part of a consistent behavior that goes to her intent and lack of mistake.

The defendant claims to not understand how her lies to Nationwide fail to constitute 404(b) evidence. ECF 346, at 17.  But the evidence that the defendant engaged in a series of carefully intertwined steps to unlawfully secure funds for the purchase of her home—lying on the downpayment, then lying to get the mortgage—are evidence both of her motive: purchase the houses while rates were low and funds available, truth to contrary.  What's more, these lies clearly go to lack of mistake or accident. The Fourth Circuit considered this issue in *United States v. Hornsby*, where the court allowed the introduction of evidence that the defendant had concealed evidence during a criminal investigation four years earlier in a trial where the defendant was again accused of attempting to conceal evidence. 666 F.3d. 296, 307-308 (4th Cir. 2013).  The Fourth Circuit reasoned that "Prior acts that are similar in nature to the charged acts have particular probative value in showing the person's state of mind because the prior doing of other similar  acts

is useful as reducing the possibility that the act in question was done with innocent intent." *Id.* (cleaned up). *See also*, *United States v. Queen*, 132 F.3d 991, 996 (4th Cir. 1997). *See also*, *United States v. Hall*, 604 F. 3d 539, 543 (allowing introduction of evidence that the defendant operated a second trust simultaneous as fraudulent since trusts were opened at the same time and the defendant "made similar false representations" concerning the trusts). The defendant here will try to argue the same thing as the defendants in those case: that she acted with innocent intent and made a mistake. Therefore, as *Henry* makes clear, and her prior acts and underlying conviction have "particular probative value."

And the jury can easily be provided an instruction on this matter. Indeed, were it not for the defendant's claim that she needed to testify in the perjury trial and not the mortgage trial, all of these matters would have been heard together, and the jury would have been easily instructed that guilty of one offense does not indicate guilt for another.

## CONCLUSION

The defendant was convicted at trial of perjury. That conviction is admissible under Rule 404(b). The facts underlying the conviction are themselves intrinsic to the offense charged and should therefore likewise not be excluded. In the alternative, they are admissible under Rule 404(b) as well. For these reasons, the defendant's motion should be denied.


Respectfully submitted,

Erek L. Barron
United States Attorney


By:  _____/s/_____
Sean R. Delaney
Aaron S.J. Zelinsky
Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this day, a copy of the foregoing motion was electronically

filed via CM/ECF which provides notice to counsel of record.

_____/s/_____
Aaron S.J. Zelinsky
Assistant United States Attorney