IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**MARILYN J. MOSBY,**<br><br>            **Defendant.** | **Criminal No. LKG-22-7** |

### GOVERNMENT'S RESPONSE TO THE DEFENDANT'S MOTION TO EXCLUDE TESTIMONY REGARDING THE LENDERS' DECISION-MAKING PROCESS

The Government files this response to the Defendant's motion to exclude testimony regarding the lender's decision-making process. To the extent the Defendant's motion is aimed solely at the individual lender's actual determinations of the materiality of the Defendant's false statements, the Government agrees with the Defendant's position that neither party should introduce evidence of actual reliance or loss by the lender.[1] However, while the Defendant is correct that materiality is not an element of making false statements to a lender, proof of that the Defendant made statements for the purpose of influencing Cardinal Financial and United Wholesale Mortgage, and her motive in doing so, is relevant and admissible. The Court long ago, when considering the potential testimony of one of the Defendant's experts, ruled admissible testimony similar to that contemplated by the Government in this case, and the Court's ruling then

---

[1] While the Court can rightly exclude evidence regarding whether the lenders actually relied upon or suffered a loss based on the false statements, or evidence of whether the false statements themselves were material to this loan, it bears noting that the Court should zealously guard this decision during cross examination of the lender representatives.

Any insinuation from counsel that minimizes the importance of the statements in the loan application (statements such as those made by counsel in the prior trial that the 457(b) withdrawal application was only a "three-page form") should be interpreted by the Court as an attack on the materiality of the false statement. If cross examination delves into this type of inquiry, the Government believes that it should be able to correct the record to show to the jury that the statements were in fact material and that the lenders did in fact rely upon them.

is equally correct today. To the extent the Defendant's motion goes beyond this ruling to request exclusion of evidence consistent with it, her motion goes against the law of the case and should be denied.

The Government is entitled to introduce evidence regarding *why* the lenders ask for the type of information the defendant lied about, to show the defendant's intent in making the false statements to influence the lender. The Government will not seek to introduce evidence regarding *whether* the lenders actually relied on the information provided.

### A. The Testimony Will Assist the Jury In Understanding How The Defendant's Statements Were Made For The Purpose of Influencing the Lender

As an initial matter, the parties appear to agree generally on the elements of the offense charged. The Government must prove:

1. That the Defendant made or caused to be made a false statement or report relating to an application to a mortgage lending business;

2. That the Defendant acted knowingly;

3. That the false statement or report was made for the purpose of influencing in any way the mortgage lending business' action;

4. That the statement was submitted to a mortgage lending business.

Sand, Siffert, *Modern Fed. Jury Instructions,* Instruction No. 17:33 (modified). The parties also agree that materiality is not an element of § 1014. In order to the convict the Defendant, while the Government is capable of doing so, the Government need not prove that the Defendant accomplished the task of influencing the lender, that the mortgage lender actually relied on the statements, or that the mortgage lender was actually defrauded by the Defendant. *See* Sand, Siffert, *Modern Fed. Jury Instructions,* Instruction 37:16. For this reason, to the extent the Defendant's motion, in referring to the lender's "decision-making process," is a reference to the specific

2

materiality of the statements to the lender or the actual reliance of the lender on these statements, the Government does not intend to elicit this testimony.

However, there are still a variety of questions the Government will ask these witnesses that is relevant to prove the Defendant made the false statements "for the purpose of influencing in any way the mortgage lending business' action," which is an element of the offense charged, as well as to show the Defendant's motive in making the false statements. In order to prove intent and motive, the Government should be able to prove that the statements she was making were in fact the type of statements that were capable of influencing the lender. In order to prove that the statements were made for the purpose of influencing the lender, it will be necessary to explain to a jury the effects on the application of a second home rider, debts and liabilities, a letter such as the 70-day letter, or a gift letter. The best witnesses to explain these concepts are the lenders themselves. This is the testimony the Government intends to introduce.

It is alleged that the Defendant made the following false statements to Cardinal Financial: 1) she certified the only liabilities she owed were those disclosed in the application despite her large shared tax debt with her husband, 2) that she was not presently delinquent or in default on any Federal debt, despite her large shared tax debt with her husband, and 3) that she would not give a management firm or any other person or entity control over the occupancy or use of the Kissimmee vacation home when she had executed such an agreement one week prior to closing on the mortgage on the property. *See* Superseding Indictment at Count Two ¶ 20. The Government anticipates calling an underwriter from Cardinal Financial to testify regarding the application, and the Defense moves to limit that testimony.

It is alleged that the Defendant made the following false statements to United Wholesale Mortgage: 1) that as of December 2020, she had spent the past 70 days living in Florida, 2) that

she certified the only liabilities she owed were those disclosed in the application despite her large shared tax debt with her husband, 3) that she was not presently delinquent or in default on any Federal debt, despite her large shared tax debt with her husband, and 4) that she received a $5,000 gift from her husband to be applied toward the purchase price. *See* Superseding Indictment at Count Four ¶ 31. The Government anticipates calling two underwriters from United Wholesale Mortgage, and the Defendant moves to limit that testimony.

To be clear, the Government does not plan to elicit the entirety of statements found in reports of interview from each of these witnesses. The Government agrees with the Defendant, for example, that it is not an element of the crime that Cardinal Financial or United Wholesale Mortgage were actually defrauded by the Defendant's false statements, or that they actually lost money. As such, we do not anticipate asking those questions in direct examination. However, what the Government does plan to elicit from the lenders is whether the statements in the loan applications at issues were the types of statements that were capable of influencing the lender. For example, the jury is entitled to have a lender representative discuss the purpose of the questions on the form, so that the jury can make the logical determination that these are the types of statements that a borrower would believe are capable of influencing the lender.

Federal Rule of Evidence 401 states that, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence to determining the action." Fed. R. Evid. 401. To be relevant, evidence must possess logical probative value toward some fact that is legally of consequence to the case.  Relevance must be "determined in the context of facts and arguments in a particular case." *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379 (2008). A "fact of consequence" under Rule 401 is not limited to the ultimate issue or elements in a case. Instead, a fact of consequence can be any

4

step along a path of inference that leads to an "ultimate fact." *Old Chief v. United States*, 519 U.S. 172, 179 (1997). "To be relevant, evidence need not conclusively decide the issue in the case, nor make the proposition appear more probable, but it must in some degree advance the inquiry." *United States v. Causey*, 748 F.3d 310, 316 (7th Cir. 2014).

Beginning first with the impact of the second home rider, the Government is required to prove that the Defendant's false statement that she would not give a management firm or any other person or entity control over the occupancy or use of the Kissimmee vacation home was made for the purpose of influencing in any way Cardinal Financial's action. To do so, the Government will introduce evidence to the jury that, by falsely executing the second home rider, the Defendant could obtain a lower interest rate on the mortgage for the property than the one she would have received if she had not executed the second home rider, as well as that she was able to make a smaller down payment. *See* Superseding Indictment Count Two at ¶ 19. The underwriter for Cardinal Financial will provide this information to the jury. It will be up to the jury to then take that evidence, along with the remaining evidence relating to the Defendant's intent, and make the determination of whether the Defendant did in fact intend to influence the lender with her statement.

By contrast, this is not evidence of Cardinal Financial's "decision-making process" introduced to show that the Defendant accomplished the task of influencing the lender, that the mortgage lender actually relied on the statements, or that the mortgage lender was actually defrauded. Rather, it is testimony about the use of the Second Home Rider, and evidence to show that this statement was the type of statement that could influence the lender, therefore representing a "step along a path of inference" that leads to the "ultimate fact" that the Defendant intended to influence Cardinal Financial with her statements. *See Old Chief*, 519 U.S. at 179.

Likewise, regarding the gift letter submitted to United Wholesale Mortgage, the Government is required to prove that the Defendant's allegedly false statement that she received a $5,000 gift from her husband to be applied toward the purchase price was made for the purpose of influencing the lender. A portion of the evidence the Government will use to prove this is the testimony of an underwriter who will explain to the jury that the Defendant was $5,000 short of the amount needed to close on the property. He will further testify that if the funds were not obtained, that closing could not occur and the mortgage rate would rise. The fact of the need for an additional $5,000 to close goes to prove the Defendant's motive. When combined with the Defendant's concurrent bank transfers that make it seem as though her husband had given her a $5,000 gift when in truth the funds were simply the Defendant's own funds demonstrates that her intent in making the statement was to influence the lender. The Government will also provide underwriter testimony as to how a residency letter such as that submitted by the Defendant stating that she had spent the past 70 days living in Florida, could influence, in any way, a lender.

As before, the Government does not need to show that the statements of the Defendant actually influenced the decision-making process. As a result, the Government does not intend to introduce the statements, cited by the Defendant, of one underwriter that, "if he had known that the gift funds were not a true gift and had originated with the borrower, not the donor, it would have raised a red flag." Nor do we intend to introduce the statement from the other underwriter that, "if there was a misrepresentation related to the gift letter it would have been sent to the Fraud Investigation Unit." Rather, the testimony at trial will be that a gift of $5,000 was a statement capable of influencing the lender, as a "step along a path of inference" that leads to the "ultimate fact" that the Defendant intended to influence United Wholesale Mortgage. *See Old Chief*, 519 U.S. at 179.

Finally, relevant to a jury's determination of the Defendant's guilt or innocence is the reason why a statement pertaining to a large tax debt could be made for the purpose of influencing a lender. In this instance, the Defendant allegedly made false statements regarding her lack of federal debts to both Cardinal Financial and United Wholesale. The Government plans to elicit testimony from representatives of both lenders that the lenders ask questions regarding federal debts because they relate to whether the lender can pay their mortgage timely, or whether the person is subject to a lien that would in fact apply to the property that the person is seeking to purchase with the loan. This testimony is again evidence that will assist the jury is determining the Defendant's intent to influence the lender through her statements. To the Defendant's point, the Government does not intend to introduce evidence of whether the statements actually influenced the lender.

### B. The Government's Position is Consistent With the Court's Prior Ruling

The Court has already ruled in this case that evidence of the sort described above, specifically testimony about "the use of the 'Second Home Rider,'" "the use of gift letters during the mortgage application process," and "the use of property management agreements," are "relevant to the facts surrounding Defendant's mortgage loan applications and could assist the jury in understanding the evidence." ECF 105 at 14. To the extent the Defendant's motion reaches to extend beyond exclusion of actual reliance or materiality, it is inconsistent with the Court's ruling in this case.

As an initial matter, the Defendant citations are somewhat inapposite to the case at hand and do not extend to reach the types of evidence she seems to seek exclusion of. The cases represent limitations on the Defendant's ability to introduce evidence pertaining to whether the lender *actually relied* on the false representations of the Defendant, not how the underlying

7

representations could have a tendency to influence a lender. Take, for example, *United States v. Lane*, 323 F.3d 568 (7th Cir. 2003). In that case, the Seventh Circuit affirmed a district court decision to limit cross examination of lenders by a defendant who had failed to disclose, among other debts, a $2.4 million debt owed to another creditor. *See id.* 323 F.3d 582-84. As summarized by counsel, "evidence that tended to show that [the lender] did not rely on [the defendant's] financial condition in deciding to participate in refinancing . . . was irrelevant to the crimes charged." *See id.* 323 F.3d at 583. Nothing in *Lane* stands for the proposition that the jury should be barred from hearing testimony from the lenders explaining how statements about debt are part of the loan process. The same goes for *United States v. McConnell*, 2014 WL 3545206 (E.D.Va. 2014), another case where the court limited a defendant's attempt to introduce evidence. In particular, the Court limited post offense statements of a variety of parties, most particularly post-offense statements by the defendants about the materiality of the charged statements. *Id.* at *1. The court made careful note, however, to note that the defendants, "may, however, testify that they did not intend to influence the financial institutions." *Id.* at *1. Here, the proposed testimony will strictly adhere to the same purpose: whether the statements were made for the purpose of influencing the lenders. Finally, the case of *United States v. Gray*, 2011 WL 2414551 (W.D. Wisconsin 2011), is another instance of a district court limiting the defendant's attempt to introduce evidence that the defendant's conduct "actually influenced" the bank. The Government agrees that whether the bank was actually influenced by the Defendant's statements is not an element of the offense, but whether the statements made for the purpose of influencing the bank is an element.

In fact, long ago the Court made findings consistent with the Government's position here when considering the proposed expert testimony of Eric Foster—testimony the Defendant has

8

since abandoned—back in September of 2022. In the instant motion, the Defendant selectively cites the Court's opinion at ECF 105. The Defendant cites a part of the Court's ruling that a portion of the propsoed testimony would not "aid the jury in understanding the evidence or in determining a fact at issue." *See* ECF 349 at 8 (citing ECF 105 at 13). However, the Defendant only cites half of the Court's order and ignores the rest. True, the Court excluded four categories of evidence:

1) The residential mortgage lending and mortgage application process;
2) Industry standards and best practices as they relate to the role of the mortgage broker and the lender;
3) What information is considered by the lender as it relates to the borrower during the underwriting process;
4) The differences in lender and underwriting requirements as they relate to the purchase of a primary residence as compared to the purchase of a second home or investment residential property.

ECF 105 at 12-13. In excluding this evidence, the Court ruled:

> The issues for the jury in this case are whether Defendant committed perjury and/or made false statements on her mortgage loan applications. *See generally* Superseding Indictment. Given this, it is difficult to comprehend how expert testimony about the mortgage lending industry, in general, could have any bearing on these issues.

*Id.* at 13. Of course, this testimony was irrelevant because the witness was to opine about the mortgage industry generally, not about the specific types of statements at issue in the case and whether they were made for the purpose of influencing the lenders in this case. In support of her motion, however, the Defendant omitted the all-important remainder of the Court's opinion:

> The remaining topics of Mr. Forster's testimony do not raise similar concerns. Defendant states that Mr. Forster will also testify about: (1) **the use of the "Second Home Rider"** as described in Count Two, Paragraph 18 of the Superseding Indictment; (2) **the use of gift letters during the mortgage application process**; and (3) **the use of property management agreements**. Gov't. 2d Mot. Ex. A at 2-3. These topics **are relevant to the facts surrounding Defendant's mortgage loan applications and could assist the jury in understanding the evidence** related to the perjury and false statement charges in this case. Given this, the Court will not exclude Mr. Forster's testimony on these topics.

*Id.* at 14 (emphasis added). These are precisely topics on which the Government will seek to admit testimony. The testimony will not be specific testimony regarding whether the Defendant's false statements actually were relied upon by the lenders, but they will "assist the jury in understanding the evidence," and, because they go to the Defendant's motive and the fact that her statements were capable of influencing the lenders, they "are relevant to the facts surrounding the Defendant's mortgage loan applications." *See id.* at 14. To the extent the Defendant, through her motion, seeks to exclude this type of testimony, her request goes against the law of the case. *See Fusaro v. Howard*, 19 F.4th 357, 367 (4th Cir. 2021) ("Generally, the law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"); *United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999) (*quoting Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16, (1988)).

And of course, the Court was right. The jury must decide whether the Defendant made her statements for the purpose of influencing the lenders. Were the Defendant to stipulate to this element, then no further evidence would be required on the element. However, the Defendant will certainly not do so, nor should she have to. That rightly makes the element the Government's burden to prove. Therefore, testimony about the function of these statements in an application are appropriate and certainly not unfairly prejudicial in any sense. The Defendant states in her motion:

> All that matters under § 1014 is Ms. Mosby's 'subjective intent'—did she make the alleged false statement in the hope that doing so would prompt the banks to approve her applications? And that question turns entirely on what was in Ms. Mosby's head . . .

ECF 349 at 5. Of course, direct evidence of what is in a Defendant's head is not always available. Instead, the Government is entitled to rely on both direct and circumstantial evidence, and the inferences the jury can make from that evidence, to prove its case. *See* Sand, Siffert, et al., *Modern Fed. Jury Instructions*, Instruction Nos. 5:2, 6:1.

As a result, questions pertaining to the ability of the questions on the loan applications, the fact that they are on the form for a reason, and that a lender is capable of being influenced by those statements, are part of the evidence that exists that the jury can use, along with the direct evidence of the Defendant's actions, to prove that the Defendant, through her statements, intended to influence the lender. The Government is entitled to build a chain of evidence to prove, through direct and circumstantial evidence, that the Defendant made her statements for the purpose of influencing the lender. Evidence from the lender about the above-described evidence is entirely relevant to this determination.

### C. Conclusion

To the extent the Defendant's motion is aimed solely at the individual lender's actual determinations of the materiality of the Defendant's false statements, the Government agrees with the Defendant's position that neither party should introduce evidence of actual reliance or loss by the lender. However, the Government is entitled to introduce evidence regarding why the lenders ask for the type of information the defendant lied about to show the defendant's intent in making the false statements to influence the lender, and such explanation is consistent with the Court's prior ruling.

                                              Respectfully submitted,

                                              Erek L. Barron
                                              United States Attorney

By:      /s/_____
        Sean R. Delaney
        Aaron S.J. Zelinsky
        Assistant United States Attorneys

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this day, a copy of the foregoing motion was electronically filed via CM/ECF which provides notice to counsel of record.

                                                                           /s/_____
                                                    Sean R. Delaney
                                                    Assistant United States Attorney